IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| VIRGINIA HARTMAN,<br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>    Defendant. | Civil No. 3:15cv702 (MHL) |

## REPORT AND RECOMMENDATION

On February 13, 2012, Virginia Hartman ("Plaintiff") applied for Social Security Disability Insurance Benefits ("DIB"), alleging disability from arthritis, degenerative joint disease and a blood disorder, with an alleged onset date of September 13, 2009. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in assigning little weight to the opinions of the consultative examining physicians when he calculated Plaintiff's residual functional capacity ("RFC") and in presenting insufficient hypothetical questions to the vocational expert ("VE"), who testified at the hearing. (Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.")(ECF No. 13) at 3, 6-8.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, rendering the matter now

ripe for review.[1] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 16) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On February 13, 2012, Plaintiff filed an application for DIB with an alleged onset date of September 13, 2009. (R. at 67.) The SSA denied these claims initially on August 20, 2012, and again upon reconsideration on April 26, 2013. (R. at 91-101, 103-09.) At Plaintiff's written request, the ALJ held a hearing on July 24, 2014. (R. at 23-65, 110-11.) On August 13, 2014, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Social Security Act ("the Act"), because Plaintiff's RFC did not preclude her from performing past relevant work as an accounting clerk. (R. at 9-17.) The ALJ made an alternate finding that Plaintiff could perform other jobs existing in significant numbers in the national economy. (R. at 9-17.) On September 15, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-4.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth) and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The court must examine the record as a whole to determine whether substantial evidence exists, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC,

which accounts for the most that the claimant can do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. 20 C.F.R. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *Hall v. Harris*, 658 F.2d 620, 624 (4th Cir. 1981).

### III. THE ALJ'S DECISION

On July 24, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel) and a VE testified. (R. at 23-66.) On August 13, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 9-17.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 9-11.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged onset date. (R. at 11.) At step two, the ALJ found that Plaintiff had severe impairments of degenerative joint disease of the bilateral shoulders and knees and degenerative disc disease of the lumbar spine. (R. at 11.) However, at step three, the ALJ found that neither these impairments nor a combination of these impairments met or medically equaled the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 11-12.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) with some limitations. (R. at 12.) The ALJ found that Plaintiff could sit for six hours, stand for four hours and walk for four hours in an eight-hour workday. (R. at 12.) Plaintiff could occasionally reach overhead with her bilateral hands, could constantly pull and push at the light exertional level, could frequently operate foot controls with

her right foot, could frequently climb stairs and ramps, and could frequently balance and stoop. (R. at 12.) Plaintiff could never climb ladders, ropes or scaffolds. (R. at 12.) Plaintiff could never crawl and could only occasionally kneel, crouch and be exposed to unprotected heights and moving mechanical parts. (R. at 12.) At step four, the ALJ found that, based on Plaintiff's RFC, she could perform past relevant work as an accounting clerk. (R. at 15.) In the alternative, the ALJ determined at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy. (R. at 16.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 16-17.)

## IV. ANALYSIS

Plaintiff, sixty-three years old at the time of this Report and Recommendation, previously worked as an accounting clerk before the alleged onset date. (R. at 15, 203.) Notably, Plaintiff sought employment after the alleged onset date, utilizing career placement services such as Monster, Indeed and Career Builders. (R. at 281.) Plaintiff also worked for several months during the relevant period at a truck stop. (R. at 14, 55, 229-30, 247.) She applied for DIB, alleging disability from arthritis, degenerative joint disease and a blood disorder, with an alleged onset date of September 13, 2009. (R. at 67.)

In this appeal, Plaintiff argues that the ALJ erred in calculating her RFC, because he assigned little weight to the medical opinions of consultative examining experts Victoria Grady, M.D., and Walid Mangal, D.O., without giving legally sufficient reasons for doing so. (Pl.'s Mem. at 3.) Plaintiff also argues that the ALJ erred in presenting insufficient hypothetical questions to the VE during the hearing on July 24, 2014. (Pl's. Mem. at 6-8.) For the reasons set forth below, the ALJ did not err in his decision.

A. Plaintiff's physical limitations did not preclude her from working.

Although neither party raised the issue, the Court notes that Plaintiff worked after the alleged onset date, September 13, 2009. Plaintiff reported that she worked at Mr. Fuel, a truck stop, from November to December 2011, and from May 2012 to January 2013. (R. at 247.) Plaintiff posted earnings of $1,159.00 in November and December 2011; $1,236.00 from May to December 2012; and $896.00 in December 2013. The ALJ could have analyzed whether Plaintiff had engaged in SGA and, if he determined that she had, stopped his analysis there.

At the first step of the five-step analysis, the ALJ must determine whether Plaintiff engaged in work at the time of the application and if that work constituted SGA. 20 C.F.R. §§ 416.920(b), 404.1520(b). If the work constituted SGA, the analysis ends and the ALJ must find Plaintiff "not disabled," regardless of any medical condition. *Id.* Regulations define SGA as work activity that qualifies as both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. Substantial work "involves doing significant physical or mental activities" and "may be substantial even if it is done on a part-time basis." 20 C.F.R. § 404.1572(a). Work done for "pay or profit, whether or not a profit is realized" qualifies as gainful work. 20 C.F.R. § 404.1572(b). Generally, gross earnings constitute SGA if those earnings are above a certain figure specified in the regulations. 20 C.F.R. §§ 404.1574(a)(1), (b).

The Court will not engage in the analysis, because the parties did not raise the issue. *See Womack v. Astrue*, 2008 WL 2486524, at *5 (W.D. Okla. June 19, 2008) ("This Court generally decides appeals under the Social Security Act by considering the issues raised and argued in a plaintiff's brief. Courts are not required to guess as to grounds for an appeal, nor are they obliged to scour an evidentiary record for every conceivable error."). Moreover, determining whether Plaintiff's employment constituted SGA would require the Court to engage in additional

6

fact-finding, which falls outside the province of this Court. *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013). However, Plaintiff's ability to work reflects on the merits of her claims that have been raised.

> B. The ALJ did not err in assigning little weight to the opinions of Drs. Grady and Mangal, and he gave legally sufficient reasons for doing so.

Plaintiff argues that the ALJ erred in assigning little weight to the opinions of Dr. Grady and Dr. Mangal when determining Plaintiff's RFC without giving legally sufficient reasons for doing so. (Pl.'s Mem. at 3); (Pl.'s Reply Br. ("Pl.'s Reply") (ECF No. 19) at 1-2.)[2] Defendant responds that substantial evidence supports the ALJ's decision, and that the ALJ sufficiently explained his decision. (Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.")(ECF No. 17) at 11.)

The SSA regulations require the ALJ to consider all medical evidence and the opinions of medical sources. 20 C.F.R. § 404.1527. When the record contains a number of different medical opinions, including those from the claimant's treating physicians, consultative examiners or other sources that do not conflict with each other, then the ALJ makes a determination based on that evidence. 20 C.F.R. § 404.1527(c)(2). If, however, the medical opinions conflict internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them

---

[2] Plaintiff argues that "the ALJ did not acknowledge or discuss Dr. Mangal's finding that Plaintiff was limited to standing/walking 1 hour; Dr. Grady's finding that Plaintiff was limited to sitting 4 hour; both [doctors'] opinion that Plaintiff was limited to occasional reaching; Dr. Grady's opinion that Plaintiff can never perform overhead reaching; and several other discrepancies with respect to postural limitations." (Pl.'s Reply at 1-2.) However, the ALJ actually acknowledged such findings by Drs. Grady and Mangal in his decision. The ALJ cited Dr. Grady's opinion that Plaintiff "was not able to reach overhead." (R. at 13.) The ALJ further indicated that Plaintiff "would be able to stand, walk, and sit 4 hours each . . . [and] be able to . . . reach, handle, feel , and grasp occasionally . . . ." (R. at 13.) The ALJ noted that Dr. Mangal found that Plaintiff could "sit for 1 hour and walk for 45 mintutes at a time." (R. at 14.) The ALJ also noted that Dr. Mangal found that Platiniff "should only occasionally reach." (R. at 14.) The ALJ, however, decided to give little weight to their assessments, because they were "inconsistent with the overall record." (R. at 15.)

7

respective weight to properly analyze the evidence involved. 20 C.F.R. § 404.1527(c)(2), (d). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig,* 76 F.3d at 590.

The ALJ must assign specific weight to medical opinions, because a reviewing court "faces a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence." *Arnold v. Sec'y of Health Educ. & Welfare,* 567 F.2d 258, 259 (4th Cir. 1977). Unless the ALJ "has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Id.* (quoting *Oppenheim v. Finch,* 495 F.2d 396, 397 (4th Cir. 1974)) (internal quotation marks omitted). The ALJ must assign weight to opinions with enough specificity "to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . source's medical opinion and the reasons for that weight." SSR 96-2p (discussing affording weight to treating physician). Accordingly, a reviewing court cannot determine if substantial evidence supports an ALJ's findings "unless the [ALJ] explicitly indicates the weight given to all the relevant evidence." *Gordon v. Schweiker,* 725 F.2d 231, 235 (4th Cir. 1984) (citing *Myers v. Califano,* 611 F.2d 980, 983 (4th Cir. 1980)); *Strawls v. Califano,* 596 F.2d 1209, 1213 (4th Cir. 1979); *Arnold,* 567 F.2d at 259).

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up specious inconsistences." *Dunn v. Colvin,* 607 Fed. Appx. 264, 267 (4th Cir. 2015) (citing *Scivally v. Sullivan,* 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, a reviewing court should leave an ALJ's decision regarding weight

afforded a medical opinion untouched unless the ALJ failed to give a sufficient reason for the weight afforded. 20 C.F.R. § 404.1527(d).

On June 28, 2012, Dr. Grady examined Plaintiff to determine whether Plaintiff had any work-related limitations. (R. at 332.) Dr. Grady observed that Plaintiff could walk in tandem without difficulty, but she could neither reach overhead nor balance on her heels, toes or either foot. (R. at 334.) After examining Plaintiff and reviewing her medical records, Dr. Grady ultimately concluded that Plaintiff could stand for four hours, sit for four hours and walk for four hours in an eight-hour workday. (R. at 335.) Further, Dr. Grady opined that Plaintiff could lift and carry twenty pounds occasionally, could reach, handle, feel, grasp and finger occasionally and could bend, stoop, crouch and squat occasionally. (R. at 335.)

On April 13, 2013, Dr. Mangal examined Plaintiff. (R. at 418.) Dr. Mangal reported that he believed that Plaintiff presented as a reliable historian with normal memory and good concentration. (R. at 418, 420.) Plaintiff walked with a steady, asymmetric and slow gait during the examination. (R. at 420.) Plaintiff could not squat or rise from that position and had difficulty getting up and down from the exam table, but she could rise from a sitting position without assistance. (R. at 421.) Dr. Mangal ultimately assessed that Plaintiff could sit normally, that she could stand for at least one hour and walk forty-five minutes in an eight-hour workday before requiring a break, that she did not need an assistive device to walk across long or short distances or uneven terrain, that she could lift and carry at least fifteen pounds frequently and thirty pounds occasionally, and that she could reach occasionally. (R. at 423.)

The ALJ assigned little weight to the opinions of Dr. Grady and Dr. Mangal, because their opinions conflicted with the overall record. (R. at 15.) In his decision, the ALJ noted the sparsity of Plaintiff's medical record at the time of the alleged onset date of disability and

observed that, although doctors had recommended knee replacement surgery and prescribed Plaintiff pain medication, Plaintiff chose not to pursue these courses of treatment. (R. at 13.) The ALJ also looked to Plaintiff's statements about how her impairments affected her daily activities, including statements from her pain questionnaire, function report and testimony during the administrative hearing. (R. at 12-13.) Substantial evidence in the record supports the ALJ's decision to give little weight to the opinions of Drs. Grady and Mangal, because they conflicted with the record as a whole.

First, Dr. Grady's and Dr. Mangal's opinions conflict with each other. Dr. Mangal assessed that Plaintiff could sit normally, while Dr. Grady opined that Plaintiff could only sit for four hours in an eight-hour workday. (R. at 335, 423.) Although Dr. Mangal assessed that Plaintiff could stand for at least one hour and walk for forty-five minutes at a time in an eight-hour workday before taking a break, Dr. Grady concluded that Plaintiff could stand for four hours and walk for four hours in an eight-hour workday. (R. at 335, 423.) Dr. Mangal assessed that Plaintiff could lift and carry at least fifteen pounds frequently and thirty pounds occasionally, but Dr. Grady opined that Plaintiff could lift and carry twenty pounds occasionally. (R. at 335, 423.) Although Dr. Mangal noted that Plaintiff had a steady, asymmetric and slow gait, Dr. Grady observed that Plaintiff could walk without difficulty. (R. at 334, 420.)

Dr. Grady's and Dr. Mangal's opinions also conflict with Plaintiff's own statements. Plaintiff reported that she sought employment during the time period she claims to have suffered from a disability. (R. at 281.) Plaintiff further reported that she worked for several months after the alleged onset date, including at times, using medium exertion at a truck stop. (R. at 14, 55, 229-30, 247, 259.) Plaintiff stated that, despite her impairments, she could still do light house chores, including cleaning countertops, cleaning toilets, making her bed, doing laundry and

10

sweeping the floor. (R. at 218, 220.) Plaintiff further reported that she could use a computer to look for work, water plants, do art, read, feed her cats and prepare meals on a daily basis. (R. at 47-48, 218, 220, 222.) Plaintiff stated that she could attend church weekly, go for walks in her yard, drive a car, handle money, take care of a pet and shop for food. (R. at 219, 221, 222.) Additionally, Plaintiff claimed that her impairments improved with over-the-counter medication, hot showers, icing, Bengay, yoga and stretching. (R. at 30, 216, 486.)

Further, Dr. Grady's and Dr. Mangal's opinions conflict with the opinion of Dr. Robert Keeley, a state agency physician. On April 24, 2013, Dr. Keeley evaluated Plaintiff's record for reconsideration of Plaintiff's request for DIB. (R. at 77.) Dr. Keeley concluded that Plaintiff could sit for six hours in an eight-hour workday. (R. at 85.) Further, Dr. Keeley determined that Plaintiff could walk four hours in an eight-hour workday. (R. at 85.) Both Dr. Grady and Dr. Mangal concluded that Plaintiff could stoop only occasionally, but Dr. Keeley assessed that she could stoop frequently. (R. at 86, 335, 423.)

Plaintiff's medical records also conflict with the opinions of Dr. Grady and Dr. Mangal. On August 14, 2012, Plaintiff saw Malinda Brooks-Williams, M.D., for bilateral knee, shoulder, lower back and foot pain. (R. at 545.) On physical examination, Plaintiff's left knee had a full range of motion and did not exhibit tenderness. (R. at 546.) Plaintiff could elevate both shoulders to 120 degrees. (R. at 545.) On August 31, 2012, when Plaintiff returned to Dr. Brooks-Williams, she exhibited a normal gait. (R. 536.) On September 24, 2013, Dr. Brooks-Williams again noted that Plaintiff had a normal gait and could elevate both shoulders about 120 degrees. (R. at 520.) Plaintiff also had a full range of motion in her knees. (R. at 520.) On April 3, 2014, Plaintiff saw John Bettler, M.D. for kidney pain. (R. at 475.) On examination, Plaintiff had no tenderness, no spinal point tenderness to palpation. (R. at 476.)

Because substantial evidence supports the ALJ's determination that the opinions of Dr. Grady and Dr. Mangal conflicted with the overall record, the ALJ did not err in assigning those opinions little weight and he explained his decision sufficiently. Further, the ALJ had no obligation to adopt each of the limitations within those opinions when crafting Plaintiff's RFC. Therefore, deviations between those opinions and Plaintiff's RFC do not suggest a failure by the ALJ to consider those opinions, but instead reflect only the ALJ's decision not to fully adopt the opinions of Dr. Grady and Dr. Mangal when determining Plaintiff's RFC.

### C. The ALJ did not err in presenting his hypothetical questions to the VE during the hearing on July 24, 2014.

Plaintiff next argues that the ALJ erred in failing to incorporate several limitations from Dr. Grady's and Dr. Mangal's opinions into the hypothetical questions that he asked the VE during the administrative hearing. (Pl.'s Mem. at 6-7). Plaintiff also argues that one limitation from Dr. Mangal's opinion — that Plaintiff could stand for at least one hour and walk for forty-five minutes at a time in an eight-hour workday before needing to take a break — constituted a "special situation" under SSR 83-12, and that the ALJ therefore erred by not asking the VE to clarify any implications that this limitation may have had on the occupational base. (Pl.'s Mem. at 8.) Defendant responds that the ALJ did not need to present the VE with limitations contained in Dr. Grady's and Dr. Mangal's opinions that were not ultimately incorporated into Plaintiff's RFC, and further argues that the limitation in Dr. Mangal's opinion did not constitute a special situation, because Dr. Mangal did not limit the amount that Plaintiff could sit. (Def.'s Mem. at 20-21.)

When an ALJ receives testimony from a VE during an administrative hearing, the ALJ must pose hypothetical questions to the VE that accurately represent the claimant's RFC, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can

12

perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). The testimony of the VE only qualifies as "relevant or helpful" when the ALJ poses a hypothetical that represents all of the claimant's substantiated impairments. *Id.*

SSR 83-12 instructs that "when the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing," the ALJ should consult a VE for an opinion on the implications that the "unusual limitation" on the claimant's ability to sit or stand will have on the occupational base. SSR 831-12; *see also Hyatt v. Apfel*, 153 F.3d 720, at *3 (4th Cir. 1998) (unpublished table decision) (holding that SSR 83-12 does not require a finding that a plaintiff with the kind of unusual sit/stand limitation described is *per se* disabled, but rather means that testimony from a VE is called for when such a limitation is found). The kind of special situation contemplated by SSR 83-12 arises when a claimant "may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting" and is therefore "not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work." SSR 83-12.

Here, the ALJ presented the VE with a series of hypothetical questions. (R. at 56-63.) First, the ALJ asked the VE to assume that a person of the same age, education and work experience as Plaintiff could:

> . . . frequently lift and carry 10 pounds; could occasionally lift and carry 20 pounds; sit for six hours in an eight-hour day; stand or walk for four hours in an eight-hour day; could occasionally reach overhead with the hands bilaterally; could frequently push or pull at the light exertional level; could frequently operate foot controls with the right foot; could frequently climb stairs and ramps; never climb ladders, ropes, or scaffolds; frequently balance; frequently stoop; occasionally kneel; occasionally crouch; and never crawl . . . .

13

(R. at 57.) The ALJ asked whether this hyptothetical person could perform Plaintiff's past relevant work as an accounting clerk. (R. at 57.) The VE testified that the person could perform Plaintiff's past relevant work as Plaintiff had performed it and as performed in the national economy. (R. at 57.) The VE also testified that such a person could work as a television schedule coordinator (84,000 positions in the national economy), a driver's cash clerk (234,000 positions in the national economy) or an alterations work room clerk (64,000 positions in the national economy). (R. at 57-58.)

Plaintiff argues that the hypothetical question posed to the VE did not accurately reflect Plaintiff's limitations, because it did not include the limitations identified by Dr. Mangal and Grady. (Pl.'s Mem. at 7-9.) The first hypothetical question that the ALJ presented to the VE included all of the limitations found in the RFC. (R. at 12, 57.) Having concluded that the ALJ did not err in excluding the limitations found by Drs. Grady and Mangal in Plaintiff's RFC, the hypothetical questions posed to the VE adequately reflected Plaintiff's limitations and the ALJ properly relied on the VE's testimony. See *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (finding that substantial evidence supported the ALJ's decision when the hypotheticals included all limitations that were supported by the record as a whole). Because the ALJ properly excluded Dr. Mangal's limitation, he did not need to consider whether it presented a special situation. Accordingly, substantial evidence supports the ALJ's decision that Plaintiff can perform her past relevant work, as well as other jobs that exist in significant numbers in the national economy.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 16) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge M. Hannah Lauck and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: August 23, 2016